# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

FILED at 1 o'clock & 11 min P.M. Date August 5, 2009 ck
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia

In the matter of: )
)  Chapter 11 Case
JEWETT W. TUCKER, JR. )
)  Number <u>08-40990</u>
*Debtor* )

## ORDER ON UNITED STATES TRUSTEE'S MOTION TO DISMISS

Debtor's case was filed on June 5, 2008. On January 14, 2009, the United States Trustee filed a Motion to Dismiss or to Convert the Case to Chapter 7 alleging *inter alia* that Debtor had failed to file monthly operating reports with the United States Trustee's Office and had failed to amend his schedules in order to address earlier errors and omissions or inconsistencies in the reports which had been called to his attention. <u>Motion</u>, Case No. 08-40791, Dckt.No. 160. The Motion was set for a hearing in February 2009, and on the eve of that hearing, Debtor filed seven months of monthly operating reports and numerous amendments to his schedules.[1] That hearing was continued because of the lengthy trial of matters related to Debtor's solely owned company Vallambrosa Holdings, L.L.C. ("Vallambrosa"). During the spring of 2009, there was a further interruption of the filing of monthly operating reports. Debtor filed his February 2009 operating report on April 17, 2009. *See* <u>Operating Report</u>, Case No. 08-40791, Dckt. No. 251. On April 22, 2009, the

---

[1] This Court had an initial hearing on February 2, 2009 on the Trustee's motion. That hearing was then continued to February 19, 2009. On February 18, 2009, Debtor filed seven months of operating reports, several of his schedules, and his statement of financial affairs. *See* Case No. 08-40791, Dckt.Nos. 198-211.

AO 72A
(Rev. 8/82)

United States Trustee filed a request to schedule a hearing, and later on June 2, 2009, filed a second request for a hearing on his motion to dismiss or convert. *See* Motions, Case No. 08-40791, Dckt. Nos. 255 and 263. This matter was scheduled for hearing on June 22, 2009, pursuant to the United States Trustee's request, and monthly operating reports for March and April 2009 were filed over the weekend prior to the hearing. *See* Reports, Case No. 08-40791, Dckt. Nos. 272 and 273 (June 19, 2009). Debtor filed his May 2009 operating report on June 23, 2009. Report, Dckt. No. 71.

Debtor takes the position that his delay in the filing of his monthly operating reports and amended schedules was excusable (1) because his wife, from whom he is estranged, formerly maintained many of the records which he needed in order to provide the necessary information, and she did not provide the records in a timely manner, and (2) because he was unable to handle his affairs since a defibrilating device was placed in his heart, and ultimately an aortic heart valve replacement was needed in the spring of this year. Now that his medical situation has stabilized and he has hired an assistant, he believes he has filed all the necessary papers, thus any delay in the filing of these should be excused. I conclude that, in fact, there is a good basis for Debtor to be excused from the tardy filing of the first seven reports, but he is not excused from any inaccuracies or substantive deficiencies in those reports. Furthermore, because he hired an assistant to help him in filing his reports, I conclude any further delays were not excusable.

Under 11 U.S.C. § 1106(a)(1), a debtor-in-possession is required to perform

the duties specified in § 704(8) which mandates the filing of periodic operating reports and summaries and such other information as the United States Trustee or Court requires if the business of the debtor is authorized to be operated. An "unexcused failure to satisfy timely any filing or reporting requirement established by [the Bankruptcy Code] or by any rule applicable to a case under [Chapter 11]" is cause for relief under § 1112(b)(4)(F). The United States Trustee is charged with supervising the administration of Chapter 11 cases, including the debtor's performance of its statutory and fiduciary responsibilities. 28 U.S.C. § 586(a)(3). To perform the role assigned to it by Congress, the United States Trustee has adopted reporting requirements embodied in its Guidelines that a debtor-in-possession is required to fulfill. Failure to "timely provide information or attend meetings reasonably requested by the United States Trustee" also constitutes cause for relief. 11 U.S.C. § 1112(b)(4)(H). Contending that Debtor has not filed timely and complete operating reports, the United States Trustee seeks relief under § 1112(b) as it is expressly charged to do under 28 U.S.C. § 586(a)(8).[2]

Although Debtor contends that the gist of the United States Trustee's Motion concerns the timeliness of his reporting and objects to any evidence relating to the accuracy of his reporting, I allowed that additional evidence at the hearing. To do otherwise would make a mockery of Debtor's reporting obligations. Filing a piece of paper is meaningless if the content is inaccurate, misleading, or wrong, thus the content of these documents is always

---

[2] The Bankruptcy Abuse Prevention and Consumer Protection Act added to that section that "in any case in which the United States trustee finds material grounds for relief under Section 1112 of Title 11, the United States trustee shall apply promptly after making that finding to the court for relief." 28 U.S.C. § 586(a)(8).

relevant. *See* In re Kholyavka, 2008 WL 3887653, at *4 (Bankr. E.D.Pa. Aug. 20, 2008); In re Rey, 2006 WL 2457435, at *8-9 (Bankr. N.D. Ill. Aug. 21, 2006) (Pre-BAPCPA).

Debtor's monthly operating reports are incomplete, misleading, and materially false in some respects. In Debtor's initial monthly operating report (Exhibit UST-6) and his most recent one (Exhibit UST-7), Debtor reports "zero" as the monthly and cumulative totals of household and business receipts and disbursements and also shows "zero" cash on hand for either household or business purposes. In the supporting schedule, he reports "zero" receipts in the categories salary, wages, interest or dividend, alimony or child support, Social Security, pension and retirement, sale of assets, loan/borrowing from outside sources, or "other." However, he shows monthly disbursements in June 2008 of $8,748.69 and in April 2009 of $3,299.78.[3] This schedule also reveals how these expenses are paid: "Debtor's expenses are paid directly by non-filing entities - see attachments." The source of each specific disbursement, however, is not revealed anywhere in the monthly operating report.[4] In addition, in the questionnaire which is attached to the monthly operating report, question five asks "have any post-petition loans been received by the debtor from any party?" Debtor marked the answer "no."

---

[3] These two monthly operating reports contain the same information, though the expenses vary in amount, as all the other monthly operating reports filed with this Court.

[4] Debtor does note that expenses are paid by Southeast Timberlands, Inc., and Kings Ferry Plantation, Inc., but Debtor does not provide any information regarding which expenses are paid by which entity nor any breakdown of the specific amounts.

These entries in the monthly operating reports are materially false in the following respects.

1) Debtor testified that in the spring of this year, he borrowed $30,000.00 from a friend, Buddy Glawson, and that transaction is not revealed in the monthly operating reports.[5]

2) His schedules reveal no financial obligation to Southeast Timberlands or to Kings Ferry Plantation, and yet his testimony is that the disbursements made by one or both of those entities on his behalf for the payment of expenses as outlined above is not income to him but instead is a loan.[6]

Debtor's schedules are also inconsistent in other ways. For example, a personal financial statement delivered to Canpartners as part of the loan approval process for

---

[5] In Debtor's response filed several weeks after the hearing, Debtor argues that this payment was a gift and not a debt owed by him thus he did not need to reflect this as income or post-petition debt on his monthly operating reports. See Response, Dckt. No. 72, pgs. 17-18. Leaving aside for the moment the fact that Debtor now attempts to introduce new evidence, at the hearing, Debtor testified that this was a loan. Regardless, no matter how one characterizes the payment, $30,000.00 should have been reported as a cash receipt on his monthly operating report.

[6] This fact alone is a ground for dismissal under 11 U.S.C. § 1112(b)(4)(B). Section 1112(b)(4)(B) provides that "cause" is present to convert or dismiss a case where there has been "gross mismanagement" of the estate. Debtor has reported that third parties have been advancing money to pay for his expenses, all the while reporting that he has not received any income during the course of this bankruptcy case. No court approval was sought to authorize Debtor to borrow funds. Despite Debtor's assertions these advances are loans at the hearing, it is still unclear whether the sums advanced to Debtor are gifts, capital contributions to Debtor, or loans made with the expectation of repayment, especially in light of the fact that Debtor has not produced any documentation describing these specific transactions. "The point here is only that these sums of money are being transferred by third parties to the debtor without full, timely disclosure to the court and parties in interest, or, if required, approval by the court for engaging in some form of post-petition financing." In re 210 West Liberty Holdings, L.L.C., 2009 WL 1522047, at *6 (Bankr. N.D.W.Va. May 29, 2009). In this Court's view, the above is sufficient to constitute cause to convert or dismiss this case under 11 U.S.C. § 1112(b)(4)(B).

Vallambrosa, (Exhibit UST-2) shows a 73 acre tract on Interstate 75 near Warner Robins, Georgia, titled in the name of "Jewett Tucker" valued at $4.5 million.  However, he did not list this tract in Schedule A or his response to the Statement of Affairs question 10(a).  *See* Exhibits UST-1; UST-3.  That question requires disclosure of real estate transfers within the past two years, a time frame which would encompass the date of the financial statement.  *See* Exhibit UST-2.  At the hearing Tucker testified that the 73 acre tract was sold in May or June of 2008 for around $4.5 million but that it was owned by Southeast Timberlands.  In his post-hearing response, Debtor argues that the 73 acres was included in his Schedule A as part of "222 acres in Oglethorpe County, Georgia . . ." Response, Dckt. No. 72, p.12-13.  Despite his assertion, I take judicial notice of the fact that Warner Robins is located in Peach County, Georgia, over seventy-five miles and across five county lines from Oglethorpe County.  Nowhere does Interstate 75 cross Oglethorpe County or indeed come within a seventy-five mile radius of it.  I stand by my conclusion that this property was not listed in Schedule A.

In summary, when he filed this case, he failed to list a $4.5 million asset shown on a 2006 financial statement, and has now contradicted himself as to whether he sold it between 2006 and 2008, or whether it was owned by his LLC, or whether he still owns it, but identified it in his schedules in a locale far away from its actual location.  *See* Supplemental Response, Dckt. No. 72, pgs. 12-13. Omission of either the ownership or the transfer of a $4.5 million dollar asset from schedules filed under oath or efforts at obfuscation of the truth of asset ownership cannot be excused.

AO 72A
(Rev. 8/82)

In addition, Debtor has failed even at this stage to disclose assets which were discovered during the course of the testimony in this hearing:

1) He leases or owns a lake cabin on Lake Allatoona north of Atlanta, Georgia, which is not revealed anywhere in the schedules nor is any value assigned to it. *See* June 2008 Operating Report, Case No. 08-40791, Dckt.No. 205, pg. 3 (February 18, 2009).

2) He is the sole owner of Red Top Mountain, L.L.C., a limited liability company still registered with the Georgia Secretary of State, although he testifies that it no longer owns any real estate interests having divested itself sometime pre-petition.[7] Even the alleged lack of value of a concealed asset does not exculpate Debtor. *See* UST Exhibit 4; Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 618-19 (11th Cir. 1984).

3) According to his testimony and reports, Southeast Timberlands also advanced the retainers of $100,000.00 for his case and the Vallambrosa case which were paid to counsel, has paid his medical bills, and advanced a $20,000.00 fee for certain experts in the Vallambrosa case. *See* Exhibit UST-1, Statement of Financial Affairs, Question No. 9. Yet he asserts in his monthly operating reports that his income is zero, he shows no receipt of these funds and reports no account payable obligation for them. At the hearing, Debtor took the position that these sums represent loans by Southeast

---

[7] In his response after the hearing, Debtor asserts that the company does not currently own any property and that the confusion arose because his "assistant was unaware that Red Top Mountain, L.L.C., was [a] single asset company, which assets were sold off in 2000; and during February 2009, [his assistant] processed a computer generated corporate renewal invoice . . . without understanding that it was a dormant company." Response, Dckt. No. 72, pgs. 14-15.

7

Timberlands to him. These loans were presumably taken in addition to the monthly household expenses referenced earlier which vary month-to-month but have been in the thousands of dollars. He testified he was unsure of the total amount owed to Southeast Timberlands, and though Southeast Timberlands would probably be one of his largest unsecured creditors, he did not list Southeast Timberlands as a creditor on his schedules or on any of his monthly operating reports. *See* Exhibits UST-1, 6 and 7.

I sum, I agree with Debtor's contention that the delay in filing his initial schedules and operating reports was justified by the severe and life-threatening medical problems which he suffered from during the pendency of this case. However, comparison of his monthly operating reports, his schedules, his statement of affairs now on file, and his testimony from the June 22, 2009, hearing with the financial statement delivered to a major lender in 2006 in the Vallambrosa Chapter 11, a debt for which he has personally guaranteed repayment, reveals that Debtor has failed to adhere to the high standards required of a Chapter 11 debtor-in-possession who holds fiduciary responsibility to his creditors by providing accurate and complete monthly operating reports.

Furthermore, Debtor's late filing of his monthly operating reports after February 18, 2009, is not excusable. However unlikely it might seem that he would have entrusted the complexities and the details of maintaining business records to his spouse from whom he is now estranged and whose lack of cooperation is blamed for certain deficiencies in his filings on February 18, 2009, he has since hired an administrative assistant and clearly

has used well-compensated professionals to handle his tax and legal matters for years. As a result, especially after being alerted to the obvious - that filing timely reports was essential - his delays in filing the January 2009 through April 2009 monthly operating reports are unacceptable and his excuses are not justified. "Operating reports and the financial disclosures accompanying them are the life-blood of the Chapter 11 process." In other words, "[t]hey are the means by which creditors can monitor debtor's post-petition operations and as such, are an important obligation of a debtor-in-possession." Debtor's inability to timely file these reports, or to insure their accuracy after hiring an assistant, evidences "habitual noncompliance [which] calls in to question a debtor's ability to effectively reorganize." In re 210 West Liberty Holdings, LLC, slip op., 2009 WL 15222047, at *7 (Bankr.N.D.W.Va. May 29, 2009).

Indeed, with a net worth shown on his schedules of $44,932,723.53 and with direct or indirect land ownership in the thousands of acres, it requires a complete suspension of disbelief to accept his explanation for the tardiness or the inaccuracies in these monthly operating reports. Nevertheless, accepting that testimony as a sufficient explanation for the earlier delays, the current filings reveal that Debtor either cannot or will not file his obligations timely and disclose fully to the Court, to the United States Trustee, or the creditors in his case the full extent of the assets that he holds, the debt that he owes, and the nature and source of income he receives. I find that his most recent delays and the inconsistencies and omissions outlined *supra* constitute a failure to timely provide information within the meaning of 11 U.S.C. § 1112(b)(4)(H) & (F). As a result, it is clear

that "cause" exists and that the case must either be dismissed or converted to Chapter 7, whichever is in the best interest of creditors and the estate. *See* § 1112(b)(1).

I conclude that conversion to Chapter 7 is in the best interest of creditors and the estate because:

1) The case has been pending for over a year during which time Debtor has benefitted from the automatic stay and creditors have been held at bay. Debtor chose this forum to deal with his creditors and cannot now be permitted the luxury of an unfettered right to simply dismiss. This is especially true in light of the objections of a substantial creditor and the United States Trustee who as of now have the right or duty to employ federal bankruptcy law for its lawful purposes and should not lose that right at the whim of Debtor.

2) Debtor has not fully and completely adhered to his duties as a debtor-in-possession and should not, in the context of late, incomplete, or misleading disclosures be permitted to dismiss even if bankruptcy jurisdiction had not been invoked for such an extended period of time.

3) While dismissal would subject Debtor to a full range of state law creditor remedies, no dismissal could irrevocably preclude him from seeking bankruptcy relief in the future should adverse collection efforts by his creditors in state court later prove onerous or

unpleasant to him.

## ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that the case is converted to Chapter 7.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 5th day of August, 2009.